■ CAROL GROSS, Respondent, v JEROME GROSS, Appellant. [836 NYS2d 166]—

Order, Supreme Court, New York County (Joan B. Lobis, J.), entered February 21, 2006, which granted plaintiff a judgment of divorce on the ground of cruel and inhuman treatment, unanimously reversed, on the law, without costs, and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

"To obtain a divorce on the ground of cruel and inhuman treatment (Domestic Relations Law § 170 [1]), the plaintiff must show serious misconduct, not mere incompatibility, i.e., a course of conduct by the defendant that is harmful to the plaintiff's physical or mental health and makes cohabitation unsafe or improper (*Brady v Brady*, 64 NY2d 339, 343)" (*Shou-Tsung Lin v Straub*, 282 AD2d 234, 234 [2001]). Moreover, in a marriage of long duration a "high degree" of proof of cruel and inhuman treatment is required (*Palin v Palin*, 213 AD2d 707, 707 [1995], citing *Brady, supra*; *Hessen v Hessen*, 33 NY2d 406 [1974]).

Plaintiff was asked at trial whether defendant had ever "physically force[d] himself on [her] sexually." In response, plaintiff testified that "I would have to say yes. It's only one time that, really where he hurt me." Apparently by way of explanation, plaintiff went on to state that defendant "[r]ammed [her] up against the wall" in the bathroom of their residence. Plaintiff did not elaborate in any other way about what she meant in stating that defendant had "force[d] himself on [her] sexually." In its vagueness and generality, this testimony could include conduct ranging from the criminal (e.g., forcible rape) to the merely obnoxious. Moreover, plaintiff offered no evidence that she had sustained any injuries as a result of this incident (*see generally Palin, supra* [plaintiff in marriage of long duration required to satisfy a high degree of proof of cruel and inhuman treatment]). To the contrary, she testified on cross-examination that she did not suffer any physical injuries as a result of the incident.

Plaintiff also testified that defendant, on many occasions, "physically grabbed [her]." When asked to describe how defendant "grabbed" her, plaintiff stated: "[h]e'll grab me, he'll pull me down the hall, he'll block me so I can't leave the room, throw me on the bed, push me against the wall." Again, no testimony was elicited from plaintiff that she sustained any injuries as a result of defendant's conduct.

Reprehensible and highly offensive behavior, however, is not necessarily sufficient to establish the cruel-and-inhuman-treatment ground for divorce. Plaintiff's uncorroborated testimony regarding unwanted physical contact was vague and general, and no evidence was adduced from plaintiff regarding the effects, if any, of defendant's conduct on her physical or mental well-being (see Jacob v Jacob, 8 AD3d 725 [2004]; Murphy v Murphy, 257 AD2d 798 [1999]; see also Green v Green, 127 AD2d 983 [1987]; Hage v Hage, 112 AD2d 659 [1985]). In fact, plaintiff denied suffering any injuries as a result of the incident which occurred in the bathroom. Similarly, plaintiff presented no evidence regarding the effects, if any, on her mental well-being of defendant's conduct in entering the bathroom of their residence while plaintiff was showering. While a party seeking a divorce on the ground of cruel and inhuman treatment is not required to produce medical evidence demonstrating the adverse effects of the defendant's behavior (see Ridley v Ridley, 275 AD2d 941 [2000]), the absence of such evidence may be relevant (see Omahen v Omahen, 289 AD2d 890 [2001], lv denied 97 NY2d 613 [2002]). The absence of medical evidence here is particularly telling in light of plaintiff's failure to offer any other evidence tending to demonstrate that defendant's conduct was "harmful to the plaintiff's physical or mental health and makes cohabitation unsafe or improper" (Shou-Tsung Lin, 282 AD2d at 234 [citation omitted]). At bottom, we are left to speculate as to the effects, if any, of defendant's conduct on plaintiff's physical and mental well-being.[1]

Other evidence militates against the conclusion that plaintiff

---

1. *Compare Echevarria v Echevarria*, 40 NY2d 262, 264 (1976) (defendant severely beat plaintiff on two occasions causing bruises and black and blue marks on her face, head and body, and made her "too nervous to work"; plaintiff also obtained an order of protection against defendant); *Shumin Zhao v Lijun Li*, 300 AD2d 169 (2002) (defendant's serious misconduct, including spreading false rumors of extramarital affairs, affected plaintiff's physical and mental health, including loss of sleep and nervousness that caused him to lose his job), *lv dismissed* 100 NY2d 615 (2003); *Van Dyke v Van Dyke*, 273 AD2d 589 (2000) (counterclaiming defendant granted divorce on grounds of cruel and inhuman treatment where plaintiff hit defendant with frying pan

satisfied the substantial burden the law imposes upon her. The parties were married for 37 years, eight months at the time of trial, a marriage of long duration requiring a high degree of proof of cruel and inhuman treatment (*Palin, supra*). Plaintiff and defendant continued to reside together in the marital residence through the trial (*see Garver v Garver*, 253 AD2d 512 [1998]; *see also Palin, supra*). Moreover, the parties were able to talk to each other in a civilized manner, have dinner together every night, go out for meals and to the movies and attend social functions (*see Walczak v Walczak*, 206 AD2d 900 [1994]).

In sum, given the long duration of the marriage, the absence of any evidence regarding the effects, if any, of defendant's conduct on plaintiff's physical or mental well-being and the parties' continued residence in the marital home through the trial, the evidence failed to demonstrate, with a high degree of proof, "that the conduct of the defendant so endangers the physical or mental well being of the plaintiff as [to] render[ ] it unsafe or improper for the plaintiff to cohabit with the defendant" (Domestic Relations Law § 170 [1]).[2] Concur—Nardelli, J.P., Williams, Buckley, Catterson and McGuire, JJ.

---

causing injury, threw household items at him and, on one occasion, wrestled him to the ground); *Pompa v Pompa*, 259 AD2d 338 (1999) (defendant mistreated plaintiff over several years by making false, denigrating accusations, threatening violence and participating in one incident of actual violence, causing plaintiff to suffer from anxiety, palpitations and chest pain); *Bailey v Bailey*, 256 AD2d 1030 (1998) (defendant physically assaulted plaintiff causing facial and other injuries); *Meltzer v Meltzer*, 255 AD2d 497 (1998) (defendant violently pushed plaintiff to the floor, an act that caused bruising and resulted in police intervention and in the issuance of numerous orders of protection excluding defendant from the marital residence); *Feeney v Feeney*, 241 AD2d 510 (1997) (defendant's abusive conduct forced plaintiff to flee the marital residence on several occasions, causing her to suffer anxiety and depression); *Stoothoff v Stoothoff*, 226 AD2d 209 (1996) (defendant denigrated plaintiff, threatened her and committed an act of physical abuse and intimidation, causing her decreased appetite, lost sleep, nausea, stress, and anxiety).

2. Plaintiff's testimony regarding defendant's attitude about plaintiff's family and defendant's control of the family finances demonstrates, at most, "strained, unpleasant relations and incompatibility" (*Wikiera v Wikiera*, 233 AD2d 896 [1996]).